# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 7 |
| FIRST CONNECTICUT CONSULTING GROUP, INC., | Case No. 02-50852 (JJT) |
| Debtor. | |
| In re: | Chapter 7 |
| JAMES LICATA, | Case No. 02-51167 (JJT) |
| Debtor. | |

## MOTION OF JAMES LICATA AND FIRST CONNECTICUT CONSULTING GROUP, INC. FOR AN ORDER CONVERTING THESE CHAPTER 7 CASES TO CASES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

James Licata and First Connecticut Consulting Group, Inc. (the "Debtors"), by and through their undersigned counsel, hereby file this motion (the "Motion") seeking entry of an order converting these Chapter 7 cases (the "Bankruptcy Cases") to cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") pursuant to Section 706 (b) of the Bankruptcy Code and Rule 1017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Motion, the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT

To say the least, these Bankruptcy Cases have a storied past, having remained open and pending before the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court") for nearly fifteen years. During this time, neither an orderly liquidation of the Debtors' assets nor rehabilitation and reorganization of the Debtors have been achieved. Rather, the Bankruptcy Cases have been characterized by contentious litigation regarding

transferred assets, failed settlements with parties in interest and an excessive and wasteful expenditure of professional fees toward a goal that is as elusive today as it was when these Bankruptcy Cases were converted to cases under Chapter 7. Despite the prolific spending on the Bankruptcy Cases, it appears that, at best, the unsecured creditors of the First Connecticut Consulting Group case will only receive a "small" dividend after a decade and a half, as recently noted by counsel to Trustee Richard Coan.

Instead, to bring these proceedings to a successful and prompt conclusion, the Debtors propose that they be permitted to convert these Bankruptcy Cases to ones under Chapter 11 for the Debtors to: (i) provide funding to that would result in these Chapter 11 cases to move quickly toward a plan of reorganization and (ii) propose a plan that would pay creditors a substantial recovery, with the possibility of a full recovery, on account of their allowed claims. In order to ensure a prompt, effective and transparent plan process, a condition to the funding will be the approval by the Bankruptcy Court of a chief restructuring officer (the "CRO").

## JURISDICTION

1. This Bankruptcy Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. The statutory bases for the relief requested herein are Section 706 of the Bankruptcy Code and Bankruptcy Rule 1017.

## BACKGROUND

3. First Connecticut Consulting Group, Inc. ("FCCG") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 12, 2002 with the Bankruptcy Court. James Licata filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 27, 2002 with the United States Bankruptcy Court for the Middle District of Florida. Upon the

motion of the United States Trustee for the Middle District of Florida to transfer venue, Mr. Licata's bankruptcy case was transferred to the Bankruptcy Court in September 2002 and jointly administered with the case of FCCG on December 30, 2002.

4. During the pendency of the Debtors' Bankruptcy Cases, there have been numerous motions to convert the Bankruptcy Cases. The first, the *United States Trustee's Motion for an Order, Alternatively, Dismissing, Converting the Cases under Chapter 7 or Directing the U.S. Trustee to Appoint a Chapter 11 Trustee in the Above-Captioned Cases* [D.I. 54], was filed by the United States Trustee for the District of Connecticut on November 21, 2002. The hearings on this motion were continued for over a year pending the resolution of other motions, and ultimately the Bankruptcy Court did not rule on the motion.

5. Afterwards, creditor Titan Management LP ("Titan") filed the *Motion of Titan Management, L.P for an Order, Alternatively, Dismissing, Converting Cases to Chapter 7 or Directing the United States Trustee to Appoint a Chapter 11 Trustee and for Additional and Further Relief* [D.I. 232] (the "Titan Motion") seeking to dismiss, convert or appoint a Chapter 11 trustee for the bankruptcy case of FCCG. only, alleging that Mr. Licata lacked the authority to file bankruptcy proceedings for FCCG, was not the legal owner of FCCG and failed to satisfy the requirements for bankruptcy filings. Hearings on this motion were also continued and, ultimately, the Bankruptcy Court denied the Titan Motion.

6. On April 27, 2005, the Bankruptcy Court entered an *Order to Show Cause*, ordering the Debtors to appear and show cause why the Bankruptcy Cases should not be converted to Chapter 7 [D.I. 635]. A number of creditors filed motions in support of conversion and the Debtors and Official Committee of Unsecured Creditors filed motions in opposition to the Order to Show Cause. *See* D.I. 645, 655, 657, 659, 660, 663, 665, 674.

7. On July 15, 2005, the United States Trustee filed the *United States Trustee's Motion for an Order Converting the Debtor's Chapter 11 Case to One under Chapter 7* [D.I. 735], seeking to convert the case of FCCG to a case under Chapter 7 alleging that FCCG had not retained bankruptcy counsel and failed to timely file monthly operating reports from October 1, 2002 to June 5, 2005. The motion also alleged that FCCG failed to pay United States Trustee quarterly fees.

8. On December 19, 2005, a group of creditors calling themselves the Lipton Group and the Q Properties Creditors filed the *Motion to Convert to Cases under Chapter 7* [D.I. 884] seeking the appointment of an independent fiduciary to investigate and prosecute the claims of the estate and the fraudulent transfer claims against Mr. Licata's wife and partial owner of FCCG, Cynthia Licata.

9. On February 27, 2006, Creditor Titan filed the *Motion of Titan Management LP to Convert Pending Cases to Cases under Chapter 7* [D.I. 910], alleging that it has not received requested information about the business activities of Mr. Licata and the Debtors, that the Debtors have sold certain assets without notice to creditors or prior Court approval and that the Debtors have failed to disclose disposition of assets and otherwise failed to keep creditors apprised of developments in the Bankruptcy Cases. The Bankruptcy Court did not enter an order with respect to this motion.

10. On or around June 7, 2006, Mr. Licata appeared and testified at a Rule 2004 examination regarding tax matters and matters which might have impacted the tax obligations of the Debtors. Following the Rule 2004 examination, the United States of America, on behalf of the Internal Revenue Service, filed the *United States' Motion to Convert Cases to Cases under Chapter 7* [D.I. 1043], which alleged that it was uncontested that the Bankruptcy Cases can only be

4

liquidated and that the most efficient vehicle for a liquidation is through conversion to Chapter 7 and the appointment of a Chapter 7 trustee. Upon the United States' motion to convert the Debtors' Bankruptcy Cases, the Bankruptcy Court entered the *Order Upon Conversion of Cases under Chapter 11 to Cases under Chapter 7 on June 28, 2006* [D.I. 1073] and appointed separate trustees for Mr. Licata and FCCG (the "Trustees").

11. The Debtors have now remained in Chapter 7 for more than a decade. During this time, the United States' prediction that the appointment of Chapter 7 trustees would be the "most efficient vehicle" to liquidate the estates has proven badly mistaken. By just about any metric, the Trustees have failed to properly administer these estates.

12. After a decade, the Trustees have:

   a. Incurred extraordinary amounts of professional fees advancing claims in New Jersey state court that the Debtors owned extremely valuable properties, only to abandon those claims on the eve of trial. The claims were settled them for an amount likely not even sufficient to cover the costs of pursuing those claims;

   b. Allowed Peter Mocco and his companies (the "Mocco Interests") to mortgage properties in which these estates claimed an interest without disclosure to, or approval by any bankruptcy court having jurisdiction; and

   c. Ultimately settled all claims against the Mocco Interests for $1.5 million while refusing to close a much richer transaction with CB3 LLC, allowing the Mocco Interests to complete their repudiation of the terms of Peter Mocco's confirmed plan of reorganization.

**RELIEF REQUESTED**

5

13. The Debtors seek entry of an order under Section 706(b) of the Bankruptcy Code, converting the Debtors' Bankruptcy Cases under Chapter 7 of the Bankruptcy Code to cases under Chapter 11 of the Bankruptcy Code.

## BASIS FOR RELIEF

### I. Conversion of These Bankruptcy Cases to Chapter 11 Will Benefit Creditors by Allowing the Debtors to Quickly Confirm a Plan of Reorganization and Emerge from Bankruptcy

14. Section 706 of the Bankruptcy Code governs the conversion of a Chapter 7 case to one under Chapter 11 and provides, in pertinent part, as follows:

> (b) On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time.
>
> . . .
>
> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. § 706(b), (d).

15. Under Section 706(b) of the Bankruptcy Code, a party in interest can request conversion of a Chapter 7 case to one under Chapter 11 of the Bankruptcy Code at any time. *See* 11 U.S.C. § 706(b). Parties in interest may also request reconversion of bankruptcy cases under this section of the Bankruptcy Code. *See, e.g., In re Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir.1988); *Mariah Bay Leasing Corp v. Credit Union Liquidity Services Inc.*, No. 3:11-CV-029, 2011 WL 2586761 at *3 ("Mariah Bay is correct in asserting that Section 706(b) does in fact allow courts to reconvert a case previously converted to Chapter 7 back to a Chapter 11 case."). For the avoidance of doubt, the moving parties are parties in interest in the Bankruptcy Cases.

6

Mr. Licata is the debtor in the bankruptcy case *In re James Licata* and the president and 50% shareholder of the debtor in the bankruptcy case *In re First Connecticut Consulting Group Inc.*

A. **Conversion Benefits Both the Debtors and Creditors in these Bankruptcy Cases**

16. The decision to convert a case under Section 706(b) is left to the sound discretion of bankruptcy courts. *Matter of Noonan*, 17 B.R. 793, 797 (Bankr. S.D.N.Y. 1982); *In re Marcakis*, 254 B.R. 77, 80 (Bankr. E.D.N.Y. 2000) (citing *In re Starkey*, 179 B.R. 687, 692-93 (Bankr. N.D. Ok. 1995); *In re Willis*, 345 B.R. 647, 654 (B.A.P. 8th Cir. 2006) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. At 380 (1977), reprinted in 1978 U.S.C.C.A.N. 5963; S.Rep. No. 989, 95th Cong.2d Sess. at 94 (1978), reprinted in 1978 U.S.C.C.A.N. 5787) (internal quotation marks omitted)). Section 706(b) does not set forth factors a court should consider to convert or reconvert bankruptcy cases. *In re Quinn*, 490 B.R. 607, 621-22 (Bankr. D.N.M. 2012).

17. Without specific grounds for conversion under Section 706(b), bankruptcy courts "should consider anything relevant that would further the goals of the Bankruptcy Code." *Proudfoot Consulting Co. v. Gordon (In re Gordon)*, 465 B.R. 683, 692 (Bankr. N.D.Ga. 2012). Typically, however, in determining whether a case should be converted, bankruptcy courts consider whether conversion is in the best interest of the creditors and the debtors. *See id.* ("Since the decision to convert under Section 706(b) is left to the sound discretion of the court, an exercise which should include consideration of the best interests of both the creditors and the debtor."); H.R.Rep. No. 595, 95 Cong., 1st Sess. at 380 (1977), reprinted in 1978 U.S. Code Cong. & Admin.News at 6336;) ("11 U.S.C. § 706(b) allows a bankruptcy court to convert a case under Chapter 7 to Chapter 11 upon the request of a party in interest after notice and a hearing. These decisions to convert are within the discretionary powers of the bankruptcy court based on the court's determination of what will most inure to the benefit of all parties in interest."); *see also In*

*re Graham*, 21 B.R. 235, 237 (Bank.N.D. Iowa 1982); *In re Karlinger-Smith*, 544 B.R. 126 (Bankr. W.D. Tex. 2016). Here, there can be no doubt that conversion is in the best interest of all stakeholders.

18. First, the Debtors have obtained third-party financing that will now permit them to fund a Chapter 11 plan of reorganization, which in turn, will allow the Debtors to maximize the value of their estates and provide significant recoveries for their creditors. Second, based upon the length of time the Bankruptcy Cases have wallowed in Chapter 7 and the admission by counsel to the Trustees that creditors may receive only a small dividend, there can be little doubt that reconversion of the Bankruptcy Cases is in the best interest of the Debtors and all creditors.

19. As to the critical post-petition financing, attached to this Motion as Exhibit A is a term sheet for post-petition, debtor-in-possession financing in the amount of $10 million (the "<u>DIP Financing</u>"). Upon reconversion of the Bankruptcy Cases, within five (5) business days the Debtors will file a motion seeking interim and final approval of the DIP Financing consistent with the terms of the term sheet that will allow the Debtors to not only fund the Bankruptcy Cases and confirmation of a plan of reorganization, but guarantee a substantial recovery to unsecured creditors, with the possibility of full recovery. On that same date, the Debtors will file a motion to approve the retention of the CRO.

20. Based upon the applicable legal standards under Section 706, courts have looked to a debtor's ability to fund a plan of reorganization under Chapter 11 of the Bankruptcy Code in their determination of whether conversion to Chapter 11 is warranted. *See, e.g., In re Schlehuber*, 489 B.R. 570, 574 (B.A.P. 8th Cir. 2013) ("The Debtor's ability to fund a Chapter 11 plan if he chooses to do so was certainly an important and relevant consideration.").

21. In connection with conversion of the Bankruptcy Cases to cases under Chapter 11, the Debtors plan to promptly seek confirmation of a plan of reorganization. To this end, attached to this Motion as Exhibit B is a term sheet for the plan of reorganization that the Debtors will file within thirty (30) days following interim approval of the DIP Financing. Conversion will allow the Debtors to regain control of their assets and businesses, as debtors-in-possession, and the rights to certain of the estate's causes of action, including those related to ownership of certain real estate assets. The Debtors' unsecured creditors, under the proposed plan of reorganization, will recover approximately 30% of their claims in cash or cash equivalents, and pro rata shares in the proceeds of litigation recoveries (on a first dollar basis after payment of fees and costs) to which the Debtors will transfer the estates' causes of action, including fraudulent transfer claims and causes of action related to ownership of certain real estate assets. The recoveries that creditors would receive under the a Chapter 11 plan of reorganization proposed by the Debtors would be in addition to the funds currently available to the Trustees to make distributions to creditors. Through this bifurcated process, the plan of reorganization contemplates that all unsecured creditors will receive 100% of their allowed claims and significantly more than the distributions unsecured creditors would receive if the Debtors' Bankruptcy Cases remain in Chapter 7.

22. The Debtors concede that the relief of reconversion *a full decade* after conversion to Chapter 7 is extraordinary, however, these Bankruptcy Cases are nothing short of extraordinary. Having been relegated to the sidelines for over ten years and forced to watch assets being squandered and actions not pursued, the Debtors now stand ready, willing and able – with funds they have raised – to fund Chapter 11 cases, promptly complete these Bankruptcy Cases, and provide substantial, immediate recoveries to all creditors on account of their allowed claims. As

this has been the hallmark of the Bankruptcy Code, reconversion benefits both creditors and the Debtors and is the only path forward for these Bankruptcy Cases.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the Debtors seek entry of an order converting these Bankruptcy Cases to cases under Chapter 11 of the Bankruptcy Code, and granting such other and further relief as the Court deems just and proper.

JAMES J. LICATA and
FIRST CONNECTICUT CONSULTING GROUP, INC.
BY THEIR ATTORNEYS
**CUMMINGS & LOCKWOOD LLC**


By: /s/ John F. Carberry
John F. Carberry, Esq.
Six Landmark Square
Stamford, CT 06901
Tel: (203) 327-1700
Fax: (203) 351-4535
E-Mail: jcarberry@cl-law.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

By: /s/ John F. Carberry
John F. Carberry

3358549_1.docx 5/31/2017