UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| In re: | : | CHAPTER 7 |
| | : | |
| FIRST CONNECTICUT | : | CASE No. 02-50852 (JJT) |
| CONSULTING GROUP, INC., | : | |
| Debtor. | : | Re ECF Nos.: 2740, 2758 |
| | : | |
| In re: | : | CHAPTER 7 |
| | : | |
| JAMES J. LICATA, | : | CASE No. 02-51167 (JJT) |
| Debtor. | : | |
| | : | Re ECF Nos.: 1042, 1051 |

**RULING ON MOTION TO RECONSIDER**

*Introduction*

Before the Court is James J. Licata's ("Licata") Amended Motions to Reconsider the Court's Decision On Motions For An Order Converting Chapter 7 Cases To Chapter 11 Cases Under The Bankruptcy Code (ECF No. 2740, the "Motion to Reconsider").

Licata asserts three grounds for reconsideration pursuant to Fed. R. Bankr. P. 9023 of the Court's Decision On Motions For An Order Converting Chapter 7 Cases To Chapter 11 Cases Under The Bankruptcy Code (ECF No. 2734, the "Decision") dated January 10, 2018: (1) the availability of new evidence; (2) the need to prevent manifest injustice; and (3) the need to correct errors of fact and law. None of the alleged grounds for reconsideration has merit.

*Legal Standard*

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or facts that the court overlooked—matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964) ("where litigants have once battled for the court's decision, they should neither be required, nor without good reason, permitted to battle for it again"). "A motion for reconsideration is justified only where the defendant identifies an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ayazi v. United Fed'n of Teachers Local 2*, 487 F. App'x 680, 681 (2d Cir. 2012) (internal citation and quotation marks omitted).

*Discussion*

A. Newly Discovered Evidence

The party seeking relief from a judgment on the basis of newly discovered evidence has a high burden. Courts in this Circuit have characterized the test in the following manner:

> [T]he movant must demonstrate that: (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (citing *United States v. IBT*, 179 F.R.D. 444, 447 (S.D.N.Y. 1998)).

Here, the alleged "new evidence" is, for the most part, not new, and in no way proves material to the Court's Decision. Perhaps for this reason, Licata has failed to address the standards by which new evidence may, in fact, be considered 'new' in the context of a motion for reconsideration. Conveniently, in advancing the Motion to Reconsider, Licata overlooks that any "new evidence" must be both admissible, probative and not merely cumulative. The Motion to Reconsider fails in all of those regards, and none of the facts alleged by Licata even come close to meeting the applicable standard. For example, Licata asserts that Judge Rothchild's

2

observations about the apparent prevarications of Licata's perennial rival, Peter Mocco ("Mocco"), provide new evidence upon which the Court must reconsider its Decision.[1] Yet Licata fails to mention when this statement actually was made, when he discovered it, or how such an unremarkable observation about unrelated matters might affect the Court's legal reasoning on his motion for reconversion to Chapter 11.

In one breath, Licata insists that the alleged recent opening of the Proceeding[2] into Mocco's business dealings presents new evidence that confirms an elaborate fraud has been perpetrated against him for years, with the assistance of Assistant United States Attorneys and at least one bankruptcy judge. In another, Licata complains that the Court has committed "clear errors of fact" by relying upon Licata's own admissions and other credible, undisputed facts in related litigation because the relevant claims "have not yet been adjudicated".[3] Quite simply, Licata has not presented new evidence. At best, he has alleged the existence of certain purported evidence[4] that has no apparent bearing on the legal questions before the Court. The pendency of the Proceeding is neither admissible nor probative here.

    B.  Manifest Injustice

Incredibly, Licata also asserts that NJCI initiating an investigation into Mocco in the Proceeding "makes it clear the Decision should be reversed to prevent manifest injustice."[5] In Licata's telling, the mere existence of an investigation, by itself, provides "compelling evidence"

---

[1] Motion to Reconsider at 12.
[2] Due to confidentiality concerns, as announced on the record of the Court's February 1, 2018 hearing on the Trustee's Motion to Seal (ECF No. 2741, the "Motion to Seal"), the governmental investigation at issue shall hereinafter be referred to as the "Proceeding".
[3] *Id.* at 9.
[4] The mere issuance of a Subpoena or the pendency of the Proceedings, if admissible, is hardly probative of fraud. However, according to Licata's own exhibit supporting the existence of the Proceeding, a subpoena commanding testimony, Licata and his attorney may have committed a crime by disclosing such and its contents in the unsealed Motion to Reconsider. *See* Motion to Reconsider at Ex. B (citing to N.J. Stat. Ann. § 52:9M-15, "Disclosure of or inducement to disclose name of witness or information; privileged communications.").
[5] Motion to Reconsider at 1.

3

that "he has been victimized" in these proceedings "by fraudulent and potentially criminal acts of others."[6] The Court is unmoved. It is foundational in our system of government that the initiation of a prosecution, much less a mere investigation, does not, *per se*, provide compelling evidence of guilt: "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453, 15 S. Ct. 394, 403, 39 L. Ed. 481 (1895). The logic of Licata's plea to avoid manifest injustice because of the Proceeding is fundamentally flawed.

      C. Errors of Fact and Law

Licata's assertions of clear errors of fact are likewise patently misleading. The Court's limited findings were grounded in the judicial notice of the dockets of these cases, Licata's own admissions, final decisions of competent courts, entry of judgments, orders or settlements, and the pendency of myriad disputes derived from his long-acknowledged pattern of officious behavior with respect to the administration of these bankruptcy estates. His attempts to assail these undisputed facts is more an effort to minimize or explain his offenses, than challenge to their legitimacy. His protestations of this Court's reliance on its recited facts does not invoke the wisdom, necessity or fairness of this Court's reconsideration of them.

Licata's assertions of "manifest errors of law" fare no better. According to Licata, a Chapter 11 plan premised upon relitigating claims resolved by final orders would not threaten an abuse of the bankruptcy system because, as a mere advisor, we are to believe "Licata will not determine what litigation will be pursued; Mr. Lyons will."[7] But then Licata proceeds to argue that those very orders must be vacated because they were procured by an elaborate twenty-year

---

[6] *Id.* at 3.
[7] *Id.* at 10.

4

conspiracy implicating at least one distinguished jurist who ruled against Mr. Licata some thirteen years ago. In doing so, Licata once again confirms that his proposed Chapter 11 plan seeks "not to reorganize, but to relitigate" and therefore presents "an impermissible use of Chapter 11." *In re C–TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997) (internal quotation omitted). Such a path would also assure a tortured, byzantine, and enduring Chapter 11 confirmation contest[8] and unbounded post-confirmation litigation.

Even if Licata, more than a decade later, has identified new and distinct causes of action to pursue—*i.e.*, claims which did not rely upon overturning final orders and settled judgments—his plan would still not be feasible, as "its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely." Decision at 18 (*quoting In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012)). Licata represents nothing to counter this inescapable conclusion, apart from the bald assertion that "the proposed plan does not differ from any number of plans which propose an upfront cash payment with a litigation trustee or other fiduciary pursuing disputed claims."[9] Accordingly, the Court is not inclined to reconsider its determination that reconversion to Chapter 11 would be futile because a plan that is not feasible cannot satisfy 11 U.S.C. § 1129, and therefore is patently unconfirmable. Notably, Licata also wholly avoids addressing whether his plan can withstand scrutiny under the good faith standard for confirmation under 11 U.S.C. § 1129(a)(3).

Lastly, the Court is not persuaded that a veritable litany of misconduct by a debtor or its manager must be ignored when determining whether cause exists for conversion or dismissal under 11 U.S.C. § 1112(b). *See* Motion to Reconsider at 10 (citing *In re The 1031 Tax Group,*

---

[8] A contested confirmation or delayed effective date of a plan would also assure that the pending discharge litigation against Licata and the $1.6 million Judgment against Mrs. Licata would drift into limbo. Such would only serve the Licatas' self-interests.
[9] Motion to Reconsider at 10.

*LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y 2007)). The Court has broad discretion in determining whether 'cause' exists under that provision. *See, e.g.*, *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y 2007) ("*Tax Group*"); *Matter of Nugelt, Inc.*, 142 B.R. 661, 665 (Bankr. D. Del. 1992). While there may have been good reason for the court in *Tax Group* to exercise its discretion to overlook the prepetition mismanagement by the debtors' former principal, the circumstances involved here bear little resemblance to that case. In *Tax Group*, the alleged misconduct by the principal of the debtors occurred entirely prepetition and new management was in place before the petition date. Moreover, within weeks of the petition date, a new board of directors was constituted and obtained complete authority to operate the debtors, with court approval.

Such limited and promptly remediated mismanagement in *Tax Group* is a far cry from the pervasive misconduct and interference with case administration that has persisted for years in these bankruptcies. Whatever the context that Licata would have this Court consider in explaining his actions, there is no denying that his misconduct stretched from before the petition date, continued into an extended Chapter 11 process, and persisted even during the pendency of the Chapter 7 cases. This fact alone renders any reliance on *Tax Group* inapt and reconfirms this Court's view that 'cause' does in fact exist on this anomalous record. Indeed, the Court in *Tax Group* acknowledged that "[a] court may consider both the pre- and postpetition misconduct of the current management when making the determination that 'cause' exists". *Tax Grp.*, 374 B.R. at 86.

Moreover, in *Tax Group* there was no suggestion that the offending principal of the debtors would continue to play any role in managing the debtors. Here, by contrast, Licata proposes to be engaged as a consultant of the proposed DIP Lender. In the Court's assessment of

6

the record in these proceedings, Licata has proven himself incapable of taking a back seat or serving as a faithful fiduciary.

Once cause is established, Section 1112(b) provides only two ways to avoid conversion or dismissal. The court "shall convert a case … for cause, unless the court determines that the appointment under Section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1). Alternatively, a case may not be converted, provided:

> (2) … the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
>
> (i) for which there exists a reasonable justification for the act or omission; and
>
> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

Neither of these exceptions apply. Subsection (1) of Section 1112(b) does not apply. Licata's proposal avoids the explicit statutory requirement that a trustee or an examiner be appointed under the procedures established by Section 1104(a) in favor of appointing Mr. Lyons, a "seasoned restructuring officer"[10], whom Licata quibbles was selected by the special purpose investor group for which he consults rather than being "handpicked"[11] by Licata.[12]

---

[10] Decision at 9.

[11] *Id.*

[12] Amazingly, Licata has the unaffected ability to argue that "[t]here is no reason to believe Mr. Lyons would not . . . pursu[e] claims against Mr. and Mrs. Licata" while advancing a proposal for a plan of reorganization that would release those very claims.

7

Subsection (2) of Section 1112(b) does not apply either. The statute makes clear that courts enjoy significant discretion in determining whether unusual circumstances are present. *See Tax Grp.*, 374 B.R. at 93 ("The statute explicitly provides for this discretion where a court is able to identify 'unusual circumstances...that establish that the requested conversion is not or dismissal is not [sic] in the best interests of creditors and the estate' "). First, there are no unusual circumstances that establish conversion is not in the best interests of creditors or the estate. The promise some day of a *de minimis* dividend to unsecured creditors pursuant to an ill-defined Chapter 11 plan advancing on a disputed and uncertain timeline, premised on a torrent of frivolous litigation aimed at upending settled judgments, certainly does not qualify. Second, because the plan is not feasible on account of its reliance on the mere potential for litigation recoveries and predicated on an "expectation" of millions of dollars of unspecified claim reductions achieved in more litigation, there is not a reasonable likelihood that the proposed plan will be confirmed within a reasonable period of time. Third, the grounds for converting the case do not include an act "for which there exists a reasonable justification". No amount of contextualizing excuses Licata's criminal conviction for wire fraud during the pendency of these cases, or his facilitation of multiple dubious, if not outright fraudulent transfers and efforts to impede the administration of these Chapter 7 estates.[13]

*Conclusion*

For these reasons, and as set forth in the Court's Decision, the Motion for Reconsideration is DENIED, and the objections thereto are SUSTAINED.

Dated at Hartford, Connecticut this 7th day of May 2018.

*James J. Tancredi*
*United States Bankruptcy Judge*
*District of Connecticut*

---

[13] Licata has studiously avoided any detailing of the *bona fides* of his claim objections or the substance of a plan addressing all classes of creditors. An unavailing plan process, in this instance, would promise to defeat all creditor expectations through utter exhaustion and pave the way for a new round of interminable and wasteful appeals.